# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAHID MAHMOOD, ASIF MAHMOOD, ANJUM SABA, ABDULLAH KHAN WARRIACH MAHMOOD, RABIA WARRIACH MAHMOOD, ALEENA WARRIACH MAHMOOD, SAMIULLAH WARRIAH MAHMOOD, ZAHID MAHMOOD MAHMOOD, NARGIS SHAHZADA MAHMOOD, SAAD MEHMOOD MAHMOOD, WAHAB AHMAD MAHMOOD, AYESHA ZAHID MAHMOOD, WALEED HASSAN MAHMOOD, SAMIA ASHRAF, MAHBOOB AHMED, SAFIULLAH MAHBOOB, UMME ROMAAN MAHBOOB, ANNA MAHBOOB | : | CIVIL ACTION |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | NO. 23-1596 |
| | : | |
| ANTHONY BLINKEN, ALEJANDRO MAYORKAS, and JULIE STUFFT | : | |
| | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                    September 28, 2023

A United States citizen living in Pennsylvania but originally from Pakistan has tried for over sixteen years to bring his siblings and their children from Islamabad, Pakistan to the United States to live with him here. They are waiting for United States immigration officials to schedule interviews on their petitions as part of the immigration process. Some of the then-children are now adults. The worldwide pandemic beginning in 2020 as well as uncertainty in Islamabad, Pakistan seemingly delayed the United States immigration officials from scheduling interviews. The United States citizen and his Pakistani siblings, in-laws, and their children today sue several United States officials claiming they are unreasonably delaying processing their petitions for interviews to enter

the United States, acting unlawful in delaying their petitions, improperly applying the law, and violating a constitutional right to family unity in the same house in the United States. The Pennsylvanian also asks we issue a writ of mandamus to compel the officials to immediately interview his family members in Pakistan, freeze the ages of all his nieces and nephews as of the filing date of the parents' visa petitions or DS-260 applications, and rescind the Department of State's policy on visa number allocation for all persons.

We do not today dismiss the citizen's and his extended family's claim for unreasonable delay under the Administrative Procedure Act subject to further discovery and allow that claim to go forward. But we dismiss claims against the director of United States immigration services because the Pennsylvania citizen and his family lack standing. We also dismiss the claims of unlawful agency action, unlawful application of federal law, as well as constitutional claims to family unity. And we find no basis for mandamus. The remaining officials shall timely respond to the citizen's and his family's claim of unreasonable delay, and we will again review the unreasonable delay claim with the benefit of discovery.

## I.  Alleged facts

Pennsylvanian Shahid Mahmood filed Form I-130 immigration petitions with the United States Citizenship and Immigration Services to bring his siblings Asif Mahmood, Zahid Mahmood, and Samia Ashraf and their family members to the United States in January 2007.[1] Mr. Mahmood sought Family Fourth Preference (F-4) visas for his siblings. F-4 visas allow siblings of United States citizens, their spouses, and their children to obtain lawful permanent residence in the United States.[2] The United States considers Mr. Mahmood's siblings principal beneficiaries of the Form I-130 immigration petitions.[3] The United States characterizes the siblings' spouses and children as derivative beneficiaries.[4]

The applicants must first wait for the United States to approve their petitions. The applicants must then wait for available visa numbers before they can proceed further in the application process. The Department of State publishes a Visa Bulletin which shows when a visa number is available for approved visa petitions.[5] A visa number becomes available when an applicant's priority date is earlier than the cut-off date shown on the current Visa Bulletin.[6] Long waiting times and backlogs result from the Department of State's policy of counting each principal beneficiary against the quota of visas allocated for F-4 derivative beneficiaries.[7] Applicants may apply for an immigrant visa using a Form DS-260 once the United States provides available visa numbers or once they have "current priority dates."[8] Applicants and their family members who reside abroad must interview at the appropriate United States Consulate as part of the Form DS-260 application process.[9]

United States Citizenship and Immigration Services approved Mr. Mahmood's petitions, assigned the family members "priority dates," and sent the approved petitions to the National Visa Center for processing.[10] Mr. Mahmood and his family's priority dates became "current" in mid-2020 and visa numbers then became available to Mr. Mahmood and his family.[11] Mr. Mahmood and his family submitted their Forms DS-260 to the National Visa Center in July and August 2020.[12] The National Visa Center confirmed receipt of Mr. Mahmood's siblings' documentation and fees, at which point the United States considers their visa cases "documentarily complete."[13]

Mr. Mahmood's family members still have not been able to schedule an interview because of Department of State delays.[14] The National Visa Center did not timely act on the family's claims notwithstanding a congressperson's inquiry.[15] The Visa Bulletin now shows potential family-sponsored immigrants who applied later than the Mahmood family may petition for an interview.[16] Mr. Mahmood filed the petitions when his nieces and nephews were under twenty-one years old.[17]

Many of them have since "aged out" of eligibility based on turning twenty-one while the cases were pending.[18] These nieces and nephews can no longer be included in their parents' visa petitions.[19]

Mr. Mahmood and his siblings now sue Secretary of the Department of State Anthony Blinken, Secretary of the Department of Homeland Security Alejandro Mayorkas, Director of the United States Citizenship and Immigration Services Ur M. Jaddou, and Deputy Assistant Secretary of United States Consular Affairs Julie M. Stufft under the Administrative Procedure Act, the Mandamus Act, and the Constitution for conduct arising from the Department of State's processing of the Mahmood family's visa petitions. Mr. Mahmood and his siblings allege Department officials unlawfully misapplied the Immigration and Nationality Act by "counting" principal beneficiaries and derivative beneficiaries against statutory caps for certain visa categories, and by not freezing the ages of the in-laws and nieces/nephew derivative beneficiaries as of the date the sibling submits an online immigrant visa application. Mr. Mahmood and his family claim this unlawful application of the law and the unreasonable delay in processing the family's visa applications violates the Administrative Procedure Act and their perceived constitutional right to family unity in the same home.

Mr. Mahmood and his family petition for a Writ of Mandamus to compel Secretary Blinken, Secretary Mayorkas, Director Jaddou, and Assistant Secretary Stufft to immediately interview Mr. Mahmood's siblings, freeze the ages of Mr. Mahmood's nieces and nephews as of the filing date of their parents' visa petitions, and rescind the Department of State's policy on visa number allocation.[20] Mr. Mahmood and his family also ask we declare: the Department's failure to freeze the ages of the principal beneficiary's children at the time of filing their parents' applications violates the Child Status Protection Act, the Administrative Procedure Act, and the

Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and, the Department's unlawful application of the Child Status Protection Act and "imposition of its Counting Policy without engaging in rulemaking violates Section 553 of the APA; violates the INA and applicable regulations; violates the Administrative Procedure Act; is ultra vires; and an abuse of discretion, and not otherwise in accordance with law."[21]

## II. Analysis

Secretary Blinken, Secretary Mayorkas, Director Jaddou, and Assistant Secretary Stufft move to dismiss arguing: (1) we should dismiss Director of the United States Citizenship and Immigration Services Ur M. Jaddou for lack of standing, (2) we should dismiss the Mahmood family's claims under the Administrative Procedure Act and the Mandamus Act for lack of subject matter jurisdiction because the Mahmood family does not allege a mandatory, non-discretionary duty to act, (3) we should dismiss the Mahmood family's mandamus and unreasonable delay claims on the merits because the delay is reasonable, (4) we should dismiss the Mahmood family's claim of unlawful agency action because the Department's policy of allocating visa numbers is consistent with the Immigration and Nationality Act, and (5) we should dismiss the constitutional claims because the noncitizen siblings have no constitutional rights and Mr. Mahmood does not have a constitutional right to live with his noncitizen family members in the United States.[22]

We dismiss the claims against Director Jaddou for lack of standing. We dismiss the claim of unlawful agency action under section 706(2) of the Administrative Procedure Act.[23] We dismiss the claim against the United States for unlawfully applying the "counting policy" set by Congress in the Immigration and Nationality Act.[24] We dismiss all the constitutional claims. We find no basis for mandamus.

We do not dismiss Mr. Mahmood's and his family's claim of unreasonable delay under the Administrative Procedure Act.

### A.  Mr. Mahmood and his family lack standing to sue Director Jaddou.

Mr. Mahmood and his family sue Director Jaddou in her official capacity as Director of the United States Citizenship and Immigration Services.[25] Director Jaddou argues Mr. Mahmood and his family lack standing to sue her because the United States Citizenship and Immigration Services approved Mr. Mahmood's initial petition, ending her role in the petition process.[26] The Mahmood family does not dispute this fact.[27] Mr. Mahmood and his family lack standing to sue Director Jaddou.

Standing can only be established when it is "'likely,' as opposed to merely 'speculative,'" we can redress the injury by a favorable decision.[28] Mr. Mahmood and his family allege particularized injury by delays in processing their visa applications. Mr. Mahmood and his family have standing to proceed against Director Jaddou only to the extent we can redress this particularized injury by compelling Director Jaddou to act on their visa applications.

Neither party disputes the United States Citizenship and Immigration Services approved Mr. Mahmood's visa petitions.[29] Neither party disputes the United States Citizenship and Immigration Services has no further role in the visa issuance process.[30] The Mahmood family does not allege any facts showing Director Jaddou, in her official capacity as Director of United States Citizenship and Immigration Services, controls visa issuance policy, scheduling interviews at a consulate, or adjudicating Mr. Mahmood's visa petition.[31] She cannot be compelled to act on petitions before the National Visa Center and United States Embassy in Pakistan.[32] Mr. Mahmood and his family do not ask for, and we cannot give them, any other remedy from Director Jaddou.[33]

6

Mr. Mahmood and his family lack standing to sue Director Jaddou. We dismiss all claims against Director Jaddou.

**B.  We enjoy subject matter jurisdiction over the claims of unreasonable delay.**

The Mahmood family claims the National Visa Center and the United States Embassy in Pakistan unreasonably delayed processing their visa petitions. They assert subject matter jurisdiction under the general federal question statute, the Declaratory Judgment Act, the Mandamus Act, and the Administrative Procedure Act.[34]

Secretary Blinken, Secretary Mayorkas, and Assistant Secretary Stufft move to dismiss arguing we lack subject matter jurisdiction because there is no clear duty or mandatory, non-discretionary duty to schedule the Mahmood family for an interview or to freeze the ages of the children on the date of their parents' application.[35] We consider the allegations in the complaint as true. We find the Mahmood family met their burden to establish our subject matter jurisdiction.

The federal question statute confers jurisdiction on the district courts over actions "arising under" federal law.[36] Congress allows us to review claims of unreasonable delay under the Administrative Procedure Act.[37] We may "compel action unlawfully withheld or unreasonably delayed."[38] "However, a court is empowered 'only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act.'"[39] A court may only compel the agency to action where the "agency failed to take a *discrete* agency action that it is *required to take*."[40] Like the Administrative Procedure Act, the Mandamus Act authorizes courts to compel a federal agency "to perform a duty owed to the plaintiff."[41] To obtain mandamus relief, a plaintiff must show (1) he has a clear right to the relief requested; (2) the federal official has a clear duty to act; and (3) no other adequate remedy is available.[42] Most courts to address the issue agree, "[F]or purposes of compelling agency action that has been unreasonable

delayed, the mandamus statute and the [Administrative Procedure Act] are coextensive."[43] We therefore merge our analysis of the Administrative Procedure Act and mandamus claims on this motion to dismiss.

The Mahmood family as the party asserting jurisdiction bear the "burden of establishing federal jurisdiction."[44] A subject matter jurisdiction challenge may be a facial or factual.[45] A facial attack concerns insufficient pleading and a factual attack concerns a disputed fact relevant to jurisdiction.[46] A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"[47] For factual attacks, the plaintiff may respond with evidence justifying jurisdiction and we then weigh the evidence. Secretary Blinken, Secretary Mayorkas, and Assistant Secretary Stufft contest the sufficiency of the allegations of jurisdiction in the complaint, alleging, "Plaintiffs fail to demonstrate that there is a clear duty or mandatory, non-discretionary to act."[48] This jurisdictional attack is facial and we must accept as true the allegations in the complaint.[49]

We first find we enjoy subject matter jurisdiction over the Mahmood family's claims of unreasonable delay because they arise under federal law.[50] Judge Dalzell addressed a similar issue in *Han Cao v. Upchurch*, in which he found a party who asserted a cause of action under two separate federal laws defeated a facial attack to subject matter jurisdiction.[51] Han Cao was a permanent resident. He sued the Attorney General for unreasonable delay in the adjudication of his adjustment of status petition. Judge Dalzell reasoned, "[W]e have subject matter jurisdiction under 28 U.S.C. § 1331 since [the Han Cao family] allege a cause of action under two separate federal laws, namely the mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 706(1)."[52] The Mahmood family also pleads subject matter jurisdiction under the Mandamus Act and the Administrative Procedure Act on the basis of unreasonable delay.

Secretary Blinken, Secretary Mayorkas, and Assistant Secretary Stufft argue we have no jurisdiction to compel them to schedule the interviews because they have no clear or mandatory, non-discretionary duty to process applications or schedule the interviews within a particular amount of time and are granted discretion to determine the process for adjudicating applications.[53] We disagree. "Congress need not have set a definitive deadline for an agency to act in order for a court to find a delay in agency action unreasonable; [section] 706(1) mandates that all action be done within a reasonable amount of time."[54] While the State Department has some discretion on when to schedule an interview, Congress requires agencies through the Administrative Procedure Act to act on matters presented to them within a "reasonable time."[55]

We are persuaded by Judge Wilson's reasoning in *Doe #1 v. Wolf* addressing Guatemala citizen Jane Doe #1, who, after entering the United States in 2000, applied for U Visa nonimmigrant status through a program which sets aside visas for victims of certain crimes.[56] Doe #1 filed a complaint in 2020 under the Administrative Procedure Act and Mandamus Act asking the court to compel United States Citizenship and Immigration Services to place her on the U Visa waiting list because a four-year waiting period constitutes unreasonable delay.[57] Judge Wilson framed the issue as "whether the *pace* by which the USCIS determines whether petitioners qualify for the U Visa waiting list is a non-reviewable discretionary matter, or whether the pace may be reviewed for reasonableness under the standard set forth in the [Administrative Procedure Act]."[58] Judge Wilson ultimately concluded she has subject matter jurisdiction to hear Doe #1's claim regarding the pace of the agency's review, reasoning, "[T]he time within which the USCIS must place eligible U-Visa petitioners on the U Visa waitlist cannot be indefinite and must be 'reasonable.'"[59]

We are like minded; Congress requires the United States embassy in Pakistan and the National Visa Center adjudicate visa petitions within a reasonable time. United States officials may have adequate justification for delaying the processing of these visa petitions, but their justification goes to the *merits* of the claim and whether the delay is unreasonable.[60] We deal now with only the threshold jurisdictional question. Courts across the country have come to different conclusions on the issue of subject matter jurisdiction in the context of unreasonable delay.[61] We are persuaded by Judge Wilson's reasoning and the reasoning of our other colleagues finding the Mahmood family has met its burden of establishing our subject matter jurisdiction.[62]

### C.   Mr. Mahmood and his family plausibly allege unreasonable delay in the processing their petitions under the Administrative Procedure Act.

Secretary Blinken, Secretary Mayorkas, and Assistant Secretary Stufft argue the Mahmood family fails to plausibly allege the delay in processing their visa petitions is unreasonable.[63] We find Mr. Mahmood and his family allege enough facts to plausibly state a claim for unreasonable delay under the Administrative Procedure Act. We dismiss the Mahmood family's claim of unreasonable delay under the Mandamus Act because they have an adequate remedy under the Administrative Procedure Act.

Congress, in the Administrative Procedure Act, provides, "With due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it."[64] Mr. Mahmood and his family plead their priority dates are current and allege, "[T]hese matters should have been set for interview and adjudication since July 2021."[65] We note the Mahmood family's allegation of an approximately two-year delay may be sufficient to establish a plausible claim of unreasonable delay under the Administrative Procedure Act.[66]

Secretary Blinken, Secretary Mayorkas, and Assistant Secretary Stufft ask us to apply the six-factor *TRAC* test offered by the United States Court of Appeals for the District of Columbia Circuit to determine whether the delay in this case is unreasonable.[67] We are not bound by the *TRAC* factors in this Circuit.[68] While courts in this Circuit recognize the *TRAC* factors, the factors developed by our Court of Appeals in *OCAWU* are generally applied in this Circuit.'"[69]

The *OCAWU* test is inherently fact-dependent, and its application is inappropriate at this stage.[70] We agree with Judge Wilson and Judge Moss as to our present inability to measure "reasonableness" of the delay until we know more about the reasons for the delay.[71] We are keenly aware of the effects of the COVID-19 pandemic and the evacuation in Afghanistan on government operations. We reviewed the United States Embassy & Consulate in Pakistan Immigrant Visa website message on backlogs, as well as the Monthly Immigrant Visa Issuance statistics provided by the State Department, but do not today have a record to understand the local condition in Islamabad, Pakistan. The State Department may be able to prove the delay is reasonable due to resource constraints and local conditions through discovery.

We cannot today measure the reasonableness of the delay in the processing of visa petitions as a matter of law. We will review a developed record. Because Congress provides a potential remedy in the Administrative Procedure Act provides a potential remedy for the Mahmood family's complaint of undue delay, we dismiss their claim for mandamus relief under section 1361.[72]

### D.  We dismiss the facial programmatic challenge to the counting policy.

Mr. Mahmood and his family argue the failure to process their visa petitions amounts to an arbitrary and capricious and otherwise unlawful agency action under Section 706 of the Administrative Procedure Act.[73] They base their theory on a conclusion the "Department of State's

policy of counting each principal beneficiary family member against the quota of visas allocated for F-4 derivative family members" constitutes unlawful agency action.[74] The Mahmood family specifically challenges this policy as applied to them and as a programmatic challenge. They do not like the policy of counting Mr. Mahmood's sibling's spouses and children against the quota of F-4 visas available. Secretary Blinken, Secretary Mayorkas, and Assistant Secretary Stufft argue they have no duty to act on the Mahmood family petitions and the Department of State's counting policy reflects Congress's intent.[75]

Congress specifies the number of visas which can be allocated to F-4 family-sponsored immigrants in 8 U.S.C. § 1153(a)(4). Section 1153(a)(4) provides the maximum number of visas allocated for F-4 family-sponsored immigrants is 65,000.[76] The worldwide cap for all family-sponsored immigrants is 480,000.[77] The Department of State "counts" derivative beneficiaries against this quota when determining how many visas can be allocated.

Congress allows us to "hold unlawful and set aside agency action" found to be arbitrary and capricious or otherwise unlawful under section 706(2) of the Administrative Procedure Act.[78] "[U]nder [section] 706, federal courts may review two types of claims: those seeking to compel certain required agency actions not yet taken ([section] 706(1)), and those seeking to set aside arbitrary 'agency actions' and determinations ([section] 706(2))."[79] Congress authorizes us "to compel agency action arbitrarily or capriciously withheld" only under section 706(1) of the Administrative Procedure Act.[80] Congress limits our power over a section 706(2) claim "to setting aside unlawful agency action and remanding to the agency for additional investigation and explanation."[81]

**1. We dismiss the programmatic challenge under Section 706(2) of the Administrative Procedure Act.**

The Mahmood family seeks to compel the United States to process visa petitions, an action which has not been taken.[82] As shown above, Congress allows us to "compel agency action arbitrarily or capriciously withheld" under section 706(1) and Mr. Mahmood and his family may proceed on their claim of unreasonable delay.[83]

But Mr. Mahmood and his family may not challenge the "Department of State's policy of counting each principal beneficiary family member against the quota of visas allocated for F-4 derivative family members" under the Administrative Procedure Act.[84] We dismiss the Mahmood family's challenge to the Department of State's counting policy as a prohibited programmatic challenge. "Congress only permits challenges to 'some particular agency action.'"[85] Congress does not permit "broad challenges to the administration of an entire program."[86] Such programmatic challenges 'cannot be laid before the courts for wholesale correction under the [Administrative Procedure Act].'"[87]

In *Gentile v. Securities and Exchange Commission*, our Court of Appeals considered Mr. Gentile's broad request the court deem an Securities and Exchange Commission investigation an unauthorized abuse of process, quash all subpoenas, and bar the Commission from using evidence obtained from the subpoenas in future proceedings.[88] Our Court of Appeals reasoned each of the requests "depends on the legal question of whether the SEC has legal authority to investigate him."[89] The Court held Mr. Gentile could not assert this broad challenge, reasoning, "[T]he [Administrative Procedure Act]'s statutory standing requirement excludes from judicial review legal questions untethered to agency action."[90] The court concluded, "[T]he [Administrative Procedure Act] allows challenges to discrete agency action, but not broad challenges to the administration of an entire program."[91]

Mr. Mahmood and his family posit a broad challenge to the Department of State's quota policy and seek to change how family members are counted against the F-4 visas cap.[92] A challenge to the Department of State's quota policy under Administrative Procedure Act section 706(2) is a prohibited programmatic challenge.[93]

    **2.  We dismiss the challenge to the counting policy because the Department of State's interpretation of section 1153(d) of the Immigration and Nationality Act is proper given section 1153(d)'s plain language, context, and legislative history.**

The Mahmood family challenges the Department of State's interpretation of the Immigration and Nationality Act's "counting policy." The Mahmood family contends because a spouse or child is entitled "to the same status, and the same order of consideration," spouses and children should not receive separate visa numbers from the primary F-4 applicant and only the F-4 applicant should count toward the F-4 visa quota.[94] Secretary Blinken, Secretary Mayorkas, and Assistant Secretary Stufft argue the policy of counting spouses and children of beneficiaries toward the F-4 visas cap is a reflection of the plain language of the statute.[95] We agree and dismiss the claim against the United States for unlawfully applying the "counting policy" in 8 U.S.C. § 1153(d).

The Supreme Court set out a two-part test for courts to apply to challenges to agency statutory interpretations in *Chevron v. Natural Resources Defense Council*.[96] "The first step in interpreting a statute is to determine 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'"[97] If the answer is yes, then our analysis is complete and "the unambiguously expressed intent of Congress" controls.[98] If we determine Congress has not directly addressed the precise question at issue, we cannot impose our own construction on the statute.[99] "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible

construction of the statute."[100] The Supreme Court's *Chevron* guidance "applies with full force in the immigration context."[101] We use "the traditional tools of statutory construction" to determine if Congress spoke directly on the issue.[102]

We find Congress has spoken directly on the question at issue in 8 U.S.C. § 1153 providing spouses and children of family-sponsored visa holders are entitled to the same treatment as the family-sponsored visa holder. This plain language means the family-sponsored visa holder's spouse and children will also receive family-sponsored visas, which will also count against the family-sponsored visa cap. Statutory and historical context confirm this interpretation.

The Court of Appeals for the District of Columbia spoke on nearly the same issue two years ago in *Wang v. Blinken*.[103] The potential immigrant in *Wang* challenged the agency interpretation of section 1153(d) as applied to the worldwide cap on employment and investor visas.[104] The Court reasoned the United States' interpretation of section 1553(d) of the Immigration and Nationality Act is proper given the plain language of the statute, the context of the language within the statute, and the history of the phrase over time.[105] Mr. Mahmood and his family acknowledge *Wang* but urge us to find differently.[106] We do not.

### a. The Department of State's interpretation of section 1153(d) reflects the plain language of the statute.

In addition to visas for citizens' immediate family members, Congress through the Immigration and Nationality Act provides for three additional categories of immigrant visas: family-sponsored, employment-based, and diversity. If a potential immigrant receives a family-sponsored, employment-based, or diversity visa, then they may bring their spouse and children to the United States and their spouse and children will be entitled to the "same status" and "same order of consideration" as them. Congress provides:

> **A spouse or child . . . shall**, if not otherwise entitled to an immigrant
> status and the immediate issuance of a visa under subsection (a)
> [family-sponsored], (b) [employment-based], or (c) [diversity], be
> **entitled to the same status, and the same order of consideration
> provided in the respective subsection**, if accompanying or
> following to join, the spouse or parent.[107]

Congress, through the Immigration and Nationality Act, places a cap on the number of visas for these three visa categories.[108] The Mahmood family claims the phrase "same status, and same order of consideration" require a potential immigrant's spouse and children to count as one family unit with only one visa number for all of them.[109] They argue the "derivative" beneficiaries of the family-sponsored visa holder should not be counted against the statutory caps. We disagree based on the plain language of the statute.

In *Wang v. Blinken*, foreign investors challenged the Department of State's practice of counting their spouses and children against the investors visa cap.[110] The court of appeals considered the plain language of section 1153(d) and concluded the phrases "same status" and "same order of consideration provided in the respective subsection" mean "an immigrant's derivatives receive the 'same' treatment as the immigrant."[111] We are persuaded by the court of appeals's reasoning in *Wang* as applied to the Mahmood family's arguments.

"Same status" means when an immigrant receives a family-sponsored visa, the immigrant's spouse and children receive the same type of visa.[112] For example, if Mr. Mahmood's sister Mrs. Samia Ashraf receives a family-sponsored visa, then her spouse Mahboob Ahmed and her children Safiullah, Umme Romaan, and Anna Mahboob will also receive family-sponsored visas. Because her family members will also receive family-sponsored visas, they will also count against the family-sponsored visa cap.[113] The Department of State counts the family members of a family-sponsored visa holder when it totals the number of family-sponsored visas it may issue.

Spouses and children of the family-sponsored visa holder are also entitled to the "same order of consideration provided in the respective subsection."[114] The court of appeals in *Wang* found this phrase "resolves any doubt" on the issue of whether derivative family members count against the investor visa cap.[115] The court of appeals reasoned, "[B]ecause investors' spouses and children receive 'the same order of consideration provided in the' investor visas subsubsection, and that subsection specifically caps investor visas, spouses and children are also subject to the 10,000-person cap on investor visas."[116] Because Congress provides spouses and children receive the "same order of consideration provided in the" family-sponsored visas subsection, which directly references the worldwide cap of 480,000 family-sponsored visas and the specific cap of 65,000 F-4 visas, spouses and children of immigrants are also subject to those caps.[117]

Mr. Mahmood and his family argue the court of appeals in *Wang* failed to consider the impact of requiring derivative beneficiaries to process "in the same order" as the primary beneficiary.[118] The Mahmood family argues under the Department of State's interpretation, "[T]he Agency is almost assured to separate at least one family unit every year."[119] They refer to a hypothetical scenario where a principal applicant or their spouse receives the 480,000th visa and the rest of the family has to wait until the following fiscal year to receive visas.[120] Mr. Mahmood and his family argue this interpretation violates the statute's "same status, same order of consideration" mandate because it "bounces" some family members to the following year for consideration.[121] This argument does nothing to undermine the plain meaning of the statute. The plain meaning of "same status, same order of consideration" is not "at the exact same time." A derivative beneficiary can still have the same status and order of consideration as the principal applicant even if they must wait until the next fiscal year for an available visa number.

### b. Statutory context reinforces the United States' interpretation of section 1153(d).

The statutory framework of the Immigration and Nationality Act reinforces our understanding of the plain meaning of section 1153(d). Congress exempts certain immigrants from the worldwide caps for family-sponsored immigrants.[122] For example, Congress exempts United States citizens' immediate relatives from visa caps.[123] We agree with the Court of Appeals for the District of Columbia, "If a [principal beneficiary's] spouse and children were exempt from the [] visa cap, you'd find them on that list. And since you don't, they aren't."[124] Mr. Mahmood's brothers-in-law, sisters-in-law, nieces, and nephews are not exempt from the visa cap because they do not qualify for any of these exemptions.

### c. Historical context confirms our reading of section 1153(d).

Secretary Blinken, Secretary Mayorkas, and Assistant Secretary Stufft argue their interpretation of section 1153(d) is supported by legislative history.[125] The Mahmood family does not respond to this argument.

Congress altered the Immigration and Nationality Act in 1990.[126] As the court of appeals reminds us in *Wang*, before 1990, the "same status, and the same order of consideration" provision concerning derivative family applicants was contained in a section of the Act describing which immigrants are "subject to numerical limitations."[127] Congress created a new section in 1990 listing the three "capped visa categories" (family, employment, diversity) and moved the "same status, and the same order of consideration" provision to the new section. The investors in *Wang* argued Congress altered the meaning of this provision when it moved it because the 1990 version of the Act no longer links derivative family members to the Act's numerical caps.[128] The court rejected this argument because it conflicts with the plain meaning of section 1153(d) and because judicial deference precluded the court from adopting a reading of the statute that effects a

"sweeping and monumental change in immigration policy" absent "clearer legislative direction."[129]

We agree plain meaning controls and judicial deference to the Executive Branch is warranted here. Our deference to the political branches in immigration matters requires we do not change sixty years of understanding of unaltered statutory text absent clearer legislative direction than a mere relocation of the phrase.[130] We will not endorse the Mahmood family's reading of section 1553(d), which would cause sweeping changes to immigration policy set by another branch of our government.

We also interpret the 1990 text in the same way the Department of State interpreted it before 1990. "If a statute uses words or phrases that have already received authoritative construction by … a responsible administrative agency, they are to be understood according to that construction."[131] Neither party disputes the phrase in question has been constructed to apply spouses and children of the primary beneficiary to worldwide caps for nearly sixty years.[132]

Since Congressional intent is clear, we need not address the United States' argument regarding *Chevron* deference.[133] The Department of State must continue to count visas awarded to the primary beneficiary's spouse and children when totaling family-sponsored visas.

> ### 3. The Mahmood family does not state a plausible claim the Department of State did not comply with the Administrative Procedure Act's notice and comment requirements in imposing the counting policy.

The Mahmood family asks us to declare the Department of State's imposition of its counting policy in 8 U.S.C. § 1153(d) without engaging in rulemaking violates section 553 of the Administrative Procedure Act.[134] Secretary Blinken, Secretary Mayorkas, and Assistant Secretary Stufft disagree, arguing: (1) counting F-4 derivative beneficiaries against the worldwide visa limits comes directly from the Immigration and Nationality Act's text, structure, and context; (2) the

Department's policy is the agency's interpretation of the statute, which is not subject to the Administrative Procedure Act's notice-and-comment requirements; and (3) a Department visa regulation involving foreign affairs is exempt from notice-and-comment procedures.[135]

The Mahmood family does not respond to these arguments. We agree the Mahmood family's claim is without merit because the counting policy is an interpretive rule not subject to notice and comment requirements.[136] We dismiss the Mahmood family's request for relief in the form of a declaratory judgment the counting policy violates section 553 of the Administrative Procedure Act's notice-and-comment requirements.

### E.   We dismiss the mandamus claim based on the Department of State's failure to freeze the childrens' age on the date a noncitizen submits a Form DS-260.

Congress in the Child Status Protection Act provides relief for children who "aged-out" of dependent status due to administrative processing delays by Immigration Services in adjudicating their petitions.[137] The Mahmood family contends the Department of State has a duty to freeze the children's age on the date their parents filed DS-260 applications, or alternatively, as of the date they filed visa petitions."[138]

Their argument is belied by the plain language of the statute:

> (1) For purposes of subsections (a)(2)(A) and (d), **a determination of whether an alien satisfies the age requirement** in the matter preceding subparagraph (A) of section 1101(b)(1) of this title shall be made using—
>
>> (A) **the age of the alien on the date on which an immigrant visa number becomes available for such alien** (or, in the case of subsection (d), the date on which an immigrant visa number became available for the alien's parent), but      only if the alien has sought to acquire the status of an alien lawfully      admitted      for permanent     residence within     one     year     of     such availability; **reduced by**

> **(B) the number of days in the period during which the applicable petition described in paragraph (2) was pending.**[139]

We dismiss the Mahmood family's mandamus claim based on the plain language of the statute. In determining an applicant's age under the statute, "the number of days in the period during which [the visa petition] was pending" is subtracted from "the age of the alien on the date on which an immigrant visa number becomes available for such alien."[140] For example, if a child is twenty-two years old on the date a visa number becomes available but it took Immigration Services two years to process her parent's petition, then the child is considered twenty years old for purposes of eligibility. The statute says nothing of "freezing" a child's age at the time when the parent's visa petition or DS-260 application is filed. We decline to read this obligation into the statute.

### F.   The Mahmood family does not plead the officials violated a Constitutional right.

Mr. Mahmood and his family claim the officials violated their constitutional rights to family unity and integrity by delaying the processing of their case, counting spouses and children toward immigrant visa caps, and unlawfully applying the Child Status Protection Act.[141] The United States argues Mr. Mahmood's brothers, sisters, nieces, and nephews have no constitutional rights and Mr. Mahmood fails to plead a constitutional claim because he does not have a constitutional right to live with his family in the United States. Mr. Mahmood and his family do not respond to this argument. We find Mr. Mahmood's brothers, sisters, nieces, and nephews do not enjoy these constitutional rights and Mr. Mahmood does not plead the officials violated a constitutional right.

1.   **Mr. Mahmood's brothers, sisters, nieces, and nephews cannot plead constitutional claims based on efforts to immigrate.**

Mr. Mahmood's brothers, sisters, nieces, and nephews have no constitutional rights as noncitizens.[142] In *Castro v. United States Department of Homeland Security*, the Supreme Court emphasized individuals seeking to immigrate to the United States are not protected by the Constitution. "[T]he Supreme Court has unequivocally concluded that 'an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application.'"[143]

We dismiss the constitutional claims of Asif Mahmood, Anjum Saba, Abdullah Khan Warriach Mahmood, Rabia Warriach Mahmood, Aleena Warriach Mahmood, Samiullah Warriach Mahmood, Zahid Mahmood Mahmood, Nargis Shahzada Mahmood, Saad Mehmood Mahmood, Wahab Ahmad Mahmood, Ayesha Zahid Mahmood, Waleed Hassan Mahmood, Samia Ashraf, Mahboob Ahmed, Safiullah Mahboob, Umme Romaan Mahboob, and Anna Mahboob.

2.   **Mr. Mahmood does not have a constitutional right to live with his family in the United States.**

Mr. Mahmood claims the United States delayed processing his siblings' and their children's visa applications and unlawfully applied the Child Status Protection Act in violation of the Due Process Clause of the Fifth Amendment, the Ninth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment of the Constitution.[144] The United States argues Mr. Mahmood's due process claims fail because he does not have a constitutional right to live in the United States with his family members.[145] The United States argues Mr. Mahmood cannot bring a cause of action against federal officials under the Fourteenth Amendment because the Fourteenth Amendment only applies to state action. The United States also argues Mr. Mahmood's Ninth Amendment claim fails because the Ninth

Amendment cannot abridge Congress's plenary authority to set the conditions for visa issuance. We dismiss Mr. Mahmood's constitutional claims.

We first agree Mr. Mahmood's Fourteenth Amendment claim fails because the Fourteenth Amendment only applies to state action and not to that of federal officials.[146]

We next consider Mr. Mahmood's due process claims. To state a violation of either substantive or procedural due process, Mr. Mahmood must allege the federal officials deprived him of his life, liberty, or property. Mr. Mahmood invokes certain recognized constitutional rights pertaining to family unity and integrity and implies the right to live with his siblings and their children in the United States is an extension of those rights.[147] His extended theory "runs headlong into Congress' plenary power over immigration."[148] "[T]he generic right to live with family is far removed from the specific right to reside in the United States with non-citizen family members."[149] Mr. Mahmood is correct he has a fundamental right to family unity and integrity.[150]

He does not, however, have a constitutional right to live with his brothers, sisters, nieces, and nephews *in the United States*.[151] Mr. Mahmood cannot state a constitutional claim based on a right to live with his spouse in the United States.[152] Nor can he claim he has a constitutional right to live in the United States with his own children.[153] Mr. Mahmood does not cite, nor could we find, support for a constitutional right to live *with* extended family in the United States.

Although the Ninth Amendment protects family integrity, it is not an independent source of individual rights.[154] We dismiss the Mahmood family's Ninth Amendment claims as "nothing more than a 'mere recasting' of their other constitutional challenges" which we dismissed.[155]

Even if Mr. Mahmood established a constitutional right to live with his siblings and their children in the United States, he fails to plead government action which directly restrains *his* liberty. His Equal Protection claims also fail for this reason. "There is a 'simple distinction between

government action that directly affects a citizen's legal rights, or imposes a direct restraint on his liberty, and action that is directed against a third party and affects the citizen only indirectly or incidentally.'"[156] Mr. Mahmood fails to plead government action which imposes a "direct restraint on his liberty."[157] The United States has not, for example, expelled Mr. Mahmood from the country.[158] Mr. Mahmood merely pleads federal officials delayed adjudicating his petitions for family members and failed to freeze the ages of the derivatives at the age at the time of filing their petitions.[159] These actions are directed against third parties (Mr. Mahmood's brothers, sisters, nieces, and nephews) and affect Mr. Mahmood only indirectly.[160] Mr. Mahmood cannot claim a constitutional violation on behalf of his brothers, sisters, nieces, and nephews in Pakistan.[161]

Mr. Mahmood and his siblings do not plead a federal official violated a recognized Constitutional right. We dismiss their constitutional claims.

## III. Conclusion

We dismiss claims against Director Jaddou for lack of standing. We dismiss the claims of unlawful agency action. We dismiss the claim of unlawful application of the Immigration and Nationality Act. We dismiss the Constitutional claims. We do not dismiss the claim of unreasonable delay under the Administrative Procedure Act. We deny the mandamus claims.

The parties may proceed to discovery on the issue of unreasonable delay in the processing of Shahid Mahmood's petitions for his brothers, sisters, nieces, and nephews under the Administrative Procedure Act.

---

[1] ECF No. 1 ¶ 1.

[2] *Id.* ¶ 19.

[3] *Id.* ¶¶ 2-4.

[4] *Id.*

[5] *Id.* ¶ 22.

[6] *Id.*

[7] *Id.* ¶ 25.

[8] *Id.* ¶ 23.

[9] *Id.* ¶ 24.

[10] ECF No. 1-3.

[11] ECF No. 1 ¶ 14.

[12] *Id.* ¶ 23.

[13] ECF No. 1-4.

[14] ECF No. 1 ¶ 24.

[15] *Id.* ¶17.

[16] *Id.* ¶ 15.

[17] *Id.* ¶ 26.

[18] *Id.*

[19] *Id.*

[20] *Id.* ¶ 62, Wherefore Clause ¶ 2.

[21] *Id.*, Wherefore Clause ¶¶ 3, 5.

[22] ECF No. 13. We apply the familiar standard to the federal officials' motion to dismiss. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States,* 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT* 2005-8, 806 F. App'x 101, 104 n. 5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v.*

*Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo*, Inc., 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878-79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[23] 5 U.S.C. § 706(2).

[24] 8 U.S.C. § 1153(d).

[25] ECF No. 1 ¶ 7.

[26] ECF No. 13 at 9-10.

[27] ECF No. 16.

[28] *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

[29] ECF No. 1 ¶ 13; ECF No. 1-3; ECF No. 13 at 9-10.

[30] ECF No. 13 at 9-10; ECF No. 16 at 7.

[31] ECF No. 1 ¶ 7.

[32] *Id.*

[33] *See Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 9 (D.D.C. 2022) (finding visa applicants lack standing to bring claims against the Department of Homeland Security, United

States Citizenship and Immigration Services, and the respective heads where DHS and USCIS already approved Plaintiffs' visa petitions which were now pending before the U.S. Consulate in Baghdad, finding, "[T]here is no relief that the Court could order that would remedy Plaintiffs' injury—that is, the Embassy's delay in adjudicating Plaintiffs' visas"); *Sindt v. U.S. Citizenship & Immigr. Servs.*, No. 22-774 (CKK), 2023 WL 2301978, at *3 (D.D.C. Mar. 1, 2023) (granting motion to dismiss visa applicant's claims against the State Department, finding the applicant did not have standing to challenge processing delays because the State Department had already rejected applicant's petition and returned it to Immigration Services at the time the applicant sued).

[34] ECF No. 1 ¶¶ 9-10.

[35] ECF No. 13 at 10-14.

[36] 28 U.S.C. § 1331.

[37] 5 U.S.C. § 706(1).

[38] *Id.*

[39] *Doe v. Mayorkas*, No. 23-1561, 2023 WL 3175443, at *2 (E.D. Pa. May 1, 2023) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).

[40] *Norton*, 542 U.S. at 64 (emphases in original).

[41] 28 U.S.C. § 1361.

[42] *Sharawneh v. Gonzales*, No. 07-683, 2007 WL 2684250, at *2 (E.D. Pa. Sept. 10, 2007); *see also Aerosource v. Slater*, 142 F.3d 572, 582 (3d Cir. 1998) ("Mandamus is only appropriate where the petitioner can establish that it has no alternative, adequate remedy and that its right to the writ is clear and indisputable.").

[43] *Patel v. Barr*, No. 20-3856, 2020 WL 4700636, at *7 (E.D. Pa. Aug. 13, 2020) (quoting *Palamarachouk v. Chertoff*, 568 F. Supp. 2d 460, 466 (D. Del. 2008)).

[44] *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

[45] *Id.*

[46] *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

[47] *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska. v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006)).

[48] ECF No. 13 at 10.

[49] *Doe v. Mayorkas*, No. 21-2430, 2021 WL 5013740, at *3 (E.D. Pa. Oct. 28, 2021) ("The instant motion presents a facial attack. As a result, the Rule 12(b)(6) standard of review applies: the Court accepts the Complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the Plaintiffs' favor."); *Alvarez v. Raufer*, No. 19-3155, 2020 WL 1233565, at *1 (E.D. Pa. Mar. 12, 2020) ("Because Defendants do not challenge the facts asserted in the Complaint but, instead, focus on arguing that Plaintiff's claim fails to satisfy jurisdictional requirements as a matter of law, Defendants have launched a facial attack on subject-matter jurisdiction.") (internal citations omitted); *Doe #1 v. Wolfe*, No. 20-2339, 2021 WL 4149186, at *2 (M.D. Pa. Sept. 13, 2021) ("A facial attack, which is at issue here, challenges whether jurisdiction has been properly pled and requires the court to 'only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'") (citing *Gould Elecs.*, 220 F.3d at 176).

[50] 28 U.S.C. § 1331.

[51] *Han Cao v. Upchurch*, 496 F. Supp. 2d 569, 575-76 (E.D. Pa. July 16, 2007).

[52] *Id.* at 575.

[53] ECF No. 13 ¶¶ 11-13.

[54] *Ahmed v. Holder*, 12 F. Supp. 3d 747, 753 (E.D. Pa. 2014).

[55] 5 U.S.C. § 555(b).

[56] No. 20-2339, 2021 WL 4149186 (M.D. Pa. Sept. 13, 2021).

[57] *Id.* at *3.

[58] *Id.* at *4.

[59] *Id.* at *5.

[60] *Assadzadeh v. Mueller*, No. 07-2676, 2007 WL 3252771, at *6 (E.D. Pa. Oct. 31, 2007) (denying motion to dismiss, finding, "[w]hile Defendants may have adequate justification for delaying Plaintiff's application, their justification goes to the merits of Plaintiff's claim-i.e., whether the delay is reasonable or unreasonable.").

[61] *See, e.g.*, *Lemus v. McAleenan*, No. 20-3344, 2021 WL 2253522 (D.N.J. June 3, 2021) (granting a motion to dismiss for lack of subject matter jurisdiction, finding the pace at which the Secretary of Homeland Security must adjudicate U visas is discretionary); *Beshir v. Holder*, 10 F. Supp. 3d 165, 177 (D.D.C. 2014) ("The absence of an applicable timeframe for the adjudication of adjustment applications supports the conclusion that the pace of adjudication is discretionary and that the Court lacks jurisdiction to hear [Plaintiff's] claim of unreasonable delay.").

[62] *Ahmed*, 12 F. Supp. 3d at 753 ("[C]ourts have specifically recognized jurisdiction under § 1331 and the APA to hear challenges to INS delays in processing visa, LPR, and citizen applications."); *Karimushan v. Chertoff*, No. 07-2995, 2007 WL 9813304, at *3 (E.D. Pa. Dec. 17, 2007) ("[W]hile we recognize that there is no discrete statutorily-prescribed deadline for the processing of naturalization petitions, we conclude that we have jurisdiction to decide whether CIS and the FBI have violated their duty to act on an application within a 'reasonable time' or have otherwise unreasonably delayed adjudication of Mr. Karimushan's application."); *Assadzadeh*, 2007 WL 3252771, at *5 ("Because Defendants have a mandatory duty to process naturalization applications within a reasonable time, this Court has jurisdiction over Plaintiff's APA and mandamus claims."); *Shaat v. Klapakis*, No. 06-5625, 2007 WL 2768859, at *3 (E.D. Pa. Sept. 21, 2007) ("[T]he majority of courts in this district and elsewhere to have considered the question have held that the agency does have a non-discretionary duty to adjudicate applications for naturalization, despite the lack of a statutory deadline.").

[63] ECF No. 13 at 10-14.

[64] 5 U.S.C. § 555(b).

[65] ECF No. 1 ¶ 16.

[66] Courts may find unreasonable delays when an agency fails to act for over two years. *Alvarez*, 2020 WL 1233565, at *4; *see, e.g.*, *Assadzadeh*, 2007 WL 3252771, at *6 (finding unreasonable a delay of over two years in conducting plaintiff's immigration background check, even though the law did not provide a specific timeline for conducting background checks); *Daraji v. Monica*, No. 07-1749, 2008 WL 183643, at *6 (E.D. Pa. Jan. 18, 2008) (finding delay of two years in Immigration Services's review of adjustment petition unreasonable).

[67] ECF No. 13 at 14-18.

[68] *Doe #1 v. Wolfe*, 2021 WL 4149186, at *8 ("The *TRAC* factor test is not binding precedent in the Third Circuit.").

[69] We judge the reasonableness of the delay using four factors offered by our Court of Appeals twenty-five years ago in *Oil, Chemical and Atomic Workers Union v. Occupational Safety & Health Administration*: (1) "the court should ascertain the length of time that has elapsed since the agency came under a duty to act"; (2) "the reasonableness of the delay should be judged in the context of the statute authorizing the agency's action"; (3) "the court should assess the consequences of the agency's delay"; and (4) "the courts should consider 'any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources.'" 145 F.3d 120, 123 (3d Cir. 1998).

[70] *Doe #1 v. Wolfe*, 2021 WL 4149186, at *9 ("The court agrees that employing either [the *TRAC* factors or the OCAWU factors] would be inappropriate at this stage of proceedings."); *Gonzalez*

*v. Cuccinelli*, No. 19-1435, 2021 WL 127196 (4th Cir. Jan. 14, 2021) ("A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage."); *Gonzalez v. U.S. Dep't of Homeland Sec.*, 500 F. Supp. 3d 1115, 1129-30 (E.D. Cal. 2020) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court.").

[71] *Doe #1 v. Wolfe*, 2021 WL 5013738, at *8-*10; *see also Al-Gharawy*, 617 F. Supp. 3d. at 17.

[72] *See Thompson v. U.S. Dep't of Labor*, 813 F.2d 48, 52 (3d Cir. 1987) ("Since, as we have concluded, Thompson has an adequate remedy under the APA, he is not entitled to relief under Section 1361."); *Doe v. Mayorkas*, 2023 WL 3175443, at *2 (dismissing mandamus claim for failure to state a claim, reasoning, "because the [Administrative Procedure Act] provides a remedy for Plaintiff Jane Doe's complaint of undue delay, mandamus relief under [section]1361 is not available.").

[73] 5 U.S.C. § 706 (2) (Congress allows us to "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

[74] ECF No. 1 ¶¶ 25, 40.

[75] ECF No. 17.

[76] 8 U.S.C. § 1153(a)(4).

[77] 8 U.S.C. § 1151(c)(1)(A).

[78] 5 U.S.C. § 706 (2) (Congress allows us to "hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

[79] *Ass'n of Civilian Technicians, Inc. v. United States*, 601 F. Supp. 2d 146, 159 (D.D.C. March 4, 2009) (*aff'd by Ass'n of Civilian Technicians, Inc. v. United States*, 603 F.3d 989 (D.C. Cir. 2010)).

[80] *Hondros v. U.S. Civ. Serv. Comm'n*, 720 F.2d 278, 298 (3d Cir. 1983).

[81] *Raymond Proffitt Found. v. U.S. Army Corps of Eng'rs*, 128 F. Supp. 2d 762, 767 (E.D. Pa. Aug. 22, 2000).

[82] ECF No. 1, Wherefore Clause, ¶ 2.

[83] *Hondras*, 720 F.2d at 298.

[84] ECF No. 1 ¶ 25.

[85] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).

[86] *Gentile v. S.E.C.*, 974 F.3d 311, 317 (3d Cir. 2020) (quoting *Lujan*, 497 U.S. at 893).

[87] *Id.*

[88] *Id.* at 317.

[89] *Id.*

[90] *Id.*

[91] *Id.*

[92] ECF No. 1, Wherefore Clause, ¶¶ 6-7.

[93] *Gentile*, 974 F.3d at 317 (quoting *Lujan* 497 U.S. at 893).

[94] ECF No. 16 at 11-12.

[95] ECF No. 13 at 13-18.

[96] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).

[97] *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).

[98] *Chevron*, 467 U.S. at 842-43.

[99] *Id.* at 843.

[100] *Id.*

[101] *S.E.R.L. v. Att'y Gen. U.S. of Am.*, 894 F.3d 535, 549 (3d Cir. 2018).

[102] *Al-Hasani v. Sec'y U.S. Dep't of Homeland Sec.*, No. 22-1603, 2023 WL 5600964, at *3 (3d Cir. Aug. 30, 2023) (citing *Chevron,* 467 U.S. at 842).

[103] 3 F.4th 479 (D.C. Cir. 2021).

[104] *Id.* at 481-83.

[105] *Id.* at 483.

[106] ECF No. 16 at 5.

[107] 8 U.S.C. § 1153(d) (emphasis added).

[108] 8 U.S.C. § 1153(a)-(c).

[109] ECF No. 16 at 12.

[110] 3 F.4th 479 (D.C. Cir. 2021).

[111] *Wang*, 3 F.4th at 481-82.

[112] *Id.* (applying the same logic to employment-based and investor visas).

[113] *Id.* at 482.

[114] 8 U.S.C. § 1153(d).

[115] *Wang*, 3 F.4th at 482.

[116] *Id.*

[117] 8 U.S.C. § 1153(a) ("Aliens subject to the worldwide level specified in section 1151(c) of this title for family-sponsored immigrants shall be allotted visas as follows: …(4) Qualified immigrants who are the brothers or sisters of citizens of the United States, if such citizens are at least 21 years of age, shall be allocated visas in a number not to exceed 65,000[.]").

[118] ECF No. 16 at 11-12.

[119] *Id.* at 11.

[120] *Id.* at 11-12.

[121] *Id.* at 12.

[122] 8 U.S.C. § 1151(b) (exempting immediate relatives and certain other special types of immigrants).

[123] 8 U.S.C. § 1151(b)(2)(A)(i).

[124] *Wang*, 3 F.4th at 482.

[125] ECF No. 13 at 12-18.

[126] Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978.

[127] Immigration and Nationality Act Amendments of 1965, Pub. L. No. 89-236.

[128] *Wang*, 3 F.4th at 483.

[129] *Id.*

[130] *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[W]e have recognized judicial deference to the Executive Branch is especially appropriate in the immigration context.")

[131] A. Scalia and B. Garner, *Reading Law: The Interpretation of Legal Texts* 322 (2012).

[132] *See* ECF No. 13 at 6; ECF No. 16 at 12.

[133] *Chevron*, 467 U.S. at 482-43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

[134] ECF No. 1, Wherefore Clause ¶ 5.

[135] ECF No. 13 at 24.

[136] *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 100 (2015) ("[T]he APA's notice-and-comment requirement does not apply to interpretative rules."); *Fertilizer Inst. v. U.S. E.P.A.*, 935 F.2d 1303, 1308 (D.C. Cir. 1991) ("[A]n agency can declare its understanding of what a statute requires without providing notice and comment, but an agency cannot go beyond the text of a statute and exercise its delegated powers without first providing adequate notice and comment.").

[137] Pub. L. No. 107-208.

[138] ECF No. 1 ¶¶ 52, 62.

[139] 8 U.S.C. § 1153(h)(1).

[140] *Id.*

[141] ECF No. 1 ¶¶ 45-52. To meet the definition of a "child" under the Act and be entitled to "the same status, and the same order of consideration" as the primary beneficiary, the individual must be unmarried and under the age of twenty-one. 8 U.S.C. § 1101(b)(1). Once an individual reaches the age of twenty-one or marries, he or she can no longer be considered a "child" for immigration purposes. Mr. Mahmood and his family argue the United States has a non-discretionary duty to freeze the age of the children of parents on the date of the filing of the application. ECF No. 1 ¶ 60.

[142] *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 445 (3d Cir. 2016); *see also Landon v. Plasencia*, 459 U.S. 21, 32 (1982)); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Kleindienst v.*

*Mandel*, 408 U.S. 753 (1972); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950); *Nishimura Ekiu v. United States*, 142 U.S. 651, 659-660 (1892).

[143] *Castro*, 835 F.3d at 445 (quoting *Plasencia*, 459 U.S. at 32).

[144] ECF No. 1 ¶¶ 35, 46, 47, 48, 51, 52.

[145] ECF No. 13 at 24-26.

[146] *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001) ("[T]he Fourteenth Amendment only applies to actions of the states and not to the federal government.").

[147] ECF No. 1 ¶¶ 35, 45-52.

[148] *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018).

[149] *Id. See also Alharbi v. Miller*, 368 F. Supp. 3d 527, 570-71 (E.D.N.Y. 2019) ("[P]laintiffs do not have a fundamental right to have or raise their children in the United States."); *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 227–28 (E.D.N.Y. 2021) ("Plaintiffs point to no case law at all, let alone case law binding on this court, that recognizes a fundamental constitutional right to cohabitate with one's family members within the United States.").

[150] *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment.") (internal citations omitted).

[151] *Kerry v. Din*, 576 U.S. 86, 88 (2015) ("In particular, she claims that the Government denied her due process of law when, without adequate explanation of the reason for the visa denial, it deprived her of her constitutional right to live in the United States with her spouse. There is no such constitutional right.")

[152] *Campeau v. Sandercock*, No. 21-2357, 2022 WL 1598960, at *2 (3d Cir. May 20, 2022) ("[I]t is well settled that, in accordance with Congress's plenary authority to set immigration requirements for aliens to enter the United States, a citizen does not have a Constitutional right to have an alien spouse reside in the United States.") (citing *Bakran v. Sec'y, U.S. Dept. of Homeland Sec.*, 894 F.3d 557, 565 (3d Cir. 2018)).

[153] *Id.* ("The fact that the appellants have children together does not change our analysis.") (internal citations omitted).

[154] *See Stanley*, 405 U.S. at 651 ("The integrity of the family unit has found protection in …the Ninth Amendment.") (internal citations omitted); *Perry v. Lackawanna Cnty. Children & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009) ("[T]he Ninth Amendment does not independently provide a source of individual constitutional rights.").

---

[155] *Alharbi*, 368 F. Supp. 3d at 569-70 (dismissing Ninth Amendment claims based on allegations the Government's policies for issuing visas violated their fundamental right to family integrity, reasoning, "Plaintiffs' Ninth Amendment claims are nothing more than a 'mere recasting' of their other constitutional challenges, which are 'rooted in [the] historical interpretation of the principles embodied by' separate constitutional provisions").

[156] *Din*, 576 U.S. at 101 (quoting *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 788 (1980)).

[157] *Id.*

[158] *Id.*

[159] ECF No. 1 ¶¶ 35, 46, 47, 48, 51, 52.

[160] *Din*, 576 U.S. at 101.

[161] Mr. Mahmood's Equal Protection claim also fails because he does not "allege[ ] that [he has] been intentionally treated differently from other similarly situated and that there is no rational basis for the difference in treatment." *Campeau*, 2022 WL 1598960, at *2.